UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

**CURTIS MANLEY**, *individually and on behalf of all others similarly situated*,

      **Plaintiff**,

  v.                                CIVIL ACTION NO:  3:19cv00302

**EXPERIAN INFORMATION SOLUTIONS, INC.**

      **Defendant.**

## COMPLAINT

1. This is an action for damages brought by an individual consumer, Curtis Manley, against Experian Information Solutions, Inc for violations of the Fair Credit Reporting Act, 15 U.S.C. §§ 1681a–x (the "FCRA").

## PRELIMINARY STATEMENT

2. Congress enacted the FCRA to protect consumers from the harm caused by inaccurate reporting. To this end, the FCRA requires that all consumer reporting agencies ("CRAs") follow reasonable procedures to assure the maximum possible accuracy of the personal and financial information contained in the consumer reports they sell. 15 U.S.C. § 1681e(b).

3. Additionally, one of the most critical protections the FCRA provides consumers is the right to dispute the accuracy or completeness of any item of information in his or her file.  After receiving a dispute from a consumer, a CRA must review and consider the information provided, forward all relevant information to the person who furnished the information, and conduct its own reasonable reinvestigation to determine the accuracy or completeness of the disputed information.

15 U.S.C. § 1681i(a).  The CRA must delete or correct information that is incorrect or cannot be verified.  15 U.S.C. § 1681i(a)(5).

4. This case presents nationwide class claims against Experian for violations of 15 U.S.C. § 1681e(b), which imposes upon CRAs the requirement that they employ reasonable procedures designed to assure the maximum possible accuracy of the information they report. Here and, Experian reported a debt that was incurred after Plaintiff filed bankruptcy as "discharged in bankruptcy" despite the debt never being included in Plaintiff's bankruptcy schedules. Experian's own records, had it chosen to consult them, would have quickly revealed the inaccuracy in its reporting.

5. Plaintiff therefore seeks to represent a national class of consumers for whom Experian reported a debt as discharged in bankruptcy when records to which Experian had easy access showed otherwise.

6. Plaintiff also brings individual claims against Experian for violations of 15 U.S.C. § 1681i, for its failure to reasonably investigate Plaintiff's multiple disputes of its inaccurate reporting of his non-bankruptcy account. Fourth Circuit law requires CRAs to conduct a searching inquiry into consumers' disputes, yet Experian did little other than consult its own flawed reporting in failing to correct the inaccuracies in Plaintiff's report.

**JURISDICTION AND VENUE**

7. This Court has federal question jurisdiction over Plaintiff's FCRA claims pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1681p.

8. Venue is proper in this Court under 28 U.S.C. § 1391 as Defendant regularly conducts business in this District, including contracting to supply goods and services in this District.  And the injury to Mr. Manley occurred in this District and Division, where he resides.

## PARTIES

9. Mr. Manley is a "consumer" as defined by the FCRA, 15 U.S.C. § 1681a(c).

10. Defendant Experian Information Solutions, Inc. is consumer reporting agency as defined by the FCRA, 15 U.S.C. § 1681a(f), and it conducts substantial and regular business activities in this Judicial District.

11. Third-party The Bank of Missouri is a person who furnishes information to consumer reporting agencies under the FCRA, 15 U.S.C. § 1681s-2 (a "furnisher").

## FACTUAL ALLEGATIONS

12. On March 28, 2009, Mr. Manley suffered a stroke. He was hospitalized for nearly a week of medical treatment and testing.

13. Tragically, Mr. Manley's health insurance did not go into effect until the day he left the hospital. His employer at the time required that he work 1080 hours before he qualified for health insurance. The stroke occurred on Saturday, and Mr. Manley was not to begin his health insurance until two days later, so he had no insurance coverage for this episode.

14. Without health insurance, Mr. Manley struggled to manage the medical debt.

15. He tried making arrangements with the creditors, but the debt was crushing.

16. After years of trying to manage the debt, on December 18, 2014, Mr. Manley filed for Chapter 13 bankruptcy.

17. Mr. Manley did not list the Bank of Missouri as a creditor on his Voluntary Petition to file for bankruptcy. The reason he did not do so was because he had not yet opened an account with the Bank of Missouri at the time he filed his bankruptcy petition.

18. The Bankruptcy Court confirmed Mr. Manley's bankruptcy plan on February 19, 2015. The plan required Mr. Manley to make payments of $180.00 per month for 36 months to the Chapter 13 Trustee.

19. On February 20, 2015, Mr. Manley's first child was born. This was one of the proudest moments of his life. It also added even more motivation for him to improve his credit so that he could afford a home and comfortable life for his family.

20. On June 28, 2016, sixteen months after confirmation of his bankruptcy plan, Mr. Manley opened a credit card with the Bank of Missouri. The card had a low credit limit of $350.

21. Mr. Manley opened this line of credit to help reestablish good credit history with creditors outside the bankruptcy. This would help him improve his credit score quickly after the bankruptcy was closed by maintaining a credit card with a positive payment history.

22. The Bank of Missouri account was not part of Mr. Manley's bankruptcy petition.

23. The Bank of Missouri account was never added to Mr. Manley's bankruptcy during the pendency of his bankruptcy case.

24. Beginning in September 2016 Mr. Manley and his wife decided to start looking to purchase a home.

25. Mr. Manley and his wife were scheduled to meet with a realtor on October 15, 2016 to start looking at homes. However, on October 12, 2016, Mr. Manley was diagnosed with cancer.

26. Mr. Manley's wife urged him to put purchasing a home on the back burner so that he could focus on his health. Mr. Manley did not want to do that. Purchasing a home was Mr. Manley's dream when he married his wife and he wanted to see it through.

27. So, the Manleys looked at homes and found a new construction project that they loved.

4

28. On December 16, 2016, Mr. Manley had surgery to remove the cancer.

29. On January 25, 2017, Mr. Manley filed a motion with the Bankruptcy Court to allow him to purchase the home. The Bankruptcy Court approved his motion.

30. On March 15, 2017, Mr. Manley closed on his first home. He felt great pride in accomplishing this goal, which he had worked so hard to achieve. He also had only nine months remaining on his bankruptcy plan, which he was excited to finalize. Once the bankruptcy closed, he looked forward to rebuilding his credit, including using the positive payment history with The Bank of Missouri account to do so.

31. On January 3, 2018, Mr. Manley completed his bankruptcy. He was thrilled to close a difficult chapter of his life and move forward with rebuilding his credit.

32. On March 22, 2018, the Bankruptcy Trustee filed a Final Report and Account of Mr. Manley's bankruptcy. This Report is available in the public filings of Mr. Manley's bankruptcy.

33. The Final Report and Account listed all of the creditors included in Mr. Manley's Bankruptcy.

34. The Final Report and Account did not include Bank of Missouri as one of the creditors included in Mr. Manley's bankruptcy.

35. Mr. Manley made timely payments on his Bank of Missouri credit card throughout his entire bankruptcy.

36. These payments included timely payments from July 2016 through February 2018.

37. He made these payments directly to The Bank of Missouri (which the Bank of Missouri accepted) because the account was not part of his bankruptcy.

38. The Bank of Missouri never received any payments from the Bankruptcy Trustee. The reason for this is self-evident: Mr. Manley paid all of the payments made on the account directly to The Bank of Missouri because The Bank of Missouri was not included in his bankruptcy.

39. In March 2018, Mr. Manley went online to make his monthly payment to The Bank of Missouri. The website, however, would not let him submit the payment.

40. Mr. Manley called The Bank of Missouri and spoke with an employee who told him that The Bank of Missouri would not speak with him about the account because it had been discharged in bankruptcy. Mr. Manley responded that this was a mistake and that he wanted to make his payment as he had been doing all along. The Bank of Missouri employee again said he could not make a payment because the account was discharged in bankruptcy.

41. Mr. Manley reviewed his credit reports and discovered that The Bank of Missouri was incorrectly reporting that the account was discharged through his Chapter 13 bankruptcy.

42. Experian should have caught this inaccurate information because the information being reported by The Bank of Missouri was facially inconsistent. The Bank of Missouri was reporting that (1) the account was opened in June 2016 and (2) it was included in Mr. Manley's Chapter 13 bankruptcy on December 18, 2014. This is temporally impossible and should have been a red flag for Experian that the account was not being accurately reported.

43. In April 2018, Mr. Manley submitted a dispute to Experian, explaining that the Bank of Missouri:

> [I]s stating I included them in my bankruptcy and they have closed my account causing a negative impact on my credit. I am not able to make payments to this company because of an error on their part. My score has dropped 15 points because of this. I have contacted the company and they will not listen or allow me to make my payment. I need this account removed from my report. This company was never part of my bankruptcy and I have always made payments on time.

44. Experian received Mr. Manley's dispute.

45. The Bank of Missouri inaccurately reported, yet again, that The Bank of Missouri account was included in Mr. Manley's bankruptcy, and that the "debt was included in Chapter 13 Bankruptcy on December 18, 2014."

46. Experian took no steps to reconcile the facially inconsistent items being reported by The Bank of Missouri.

47. Experian did not review any documents to determine whether The Bank of Missouri account was included in Mr. Manley's bankruptcy.

48. Experian did not conduct a reasonable reinvestigation into Mr. Manley's dispute.

49. Experian sent Mr. Manley the results of its reinvestigation into his dispute.

50. On June 12, 2018, Mr. Manley sent another dispute to Experian disputing that The Bank of Missouri account was inaccurately reporting as being included in his Chapter 13 bankruptcy.

51. Experian received Mr. Manley's new dispute.

52. The Bank of Missouri again inaccurately reported to Experian that the account was included in Mr. Manley's bankruptcy.

53. Experian did not conduct a reasonable reinvestigation into the disputes received from Mr. Manley. Instead, it continued to inaccurately report that The Bank of Missouri Account was discharged in Mr. Manley's bankruptcy.

54. At this point, Mr. Manley retained a bankruptcy lawyer to help him dispute the inaccurate account, with the hope that a letter referencing his legal counsel would receive a more careful reinvestigation.

55. On July 13, 2018, Mr. Manley sent another dispute letter to Experian reading:

> To Whom It May Concern:
>
> My attorney has provided me with this letter to formally dispute inaccurate information on credit report. My social security number is [redacted] and my date of birth is [redacted]. I have enclosed a copy of my social security card and a paystub so you can verify who I am.
>
> My account with The Bank of Missouri is <u>still</u> incorrectly reporting as derogatory and included in my Chapter 13 bankruptcy. This is inaccurate. As I told you in my previous letter, my case was filed before I opened this account. This incorrect reporting as resulted in me being unable to make payments on this account. Please correct your reporting of this account by (1) removing any indication that this account is delinquent, (2) removing any reference to bankruptcy in the "Status" and "Additional Information" sections, and (3) reflecting the payments I have made.
>
> When you have completed your investigation, please send me a copy of my credit report that shows the exact information you would give to someone who was considering me for a loan. Before continuing to report any further information regarding this matter, please contact me at the above address in order that I may supply you with any other information you may find helpful. Also, you may call me immediately if you need or will accept additional information to support my dispute. My number is [redacted].

56. Experian received Mr. Manley's dispute letters.

57. The Bank of Missouri again inaccurately reported, yet again, that the account was included in Mr. Manley's bankruptcy and that the debt was included in Chapter 13 bankruptcy on December 18, 2014.

58. Experian did not conduct a reasonable reinvestigation into the disputes received from Mr. Manley. Instead, it continued to report that The Bank of Missouri account was discharged in Mr. Manley's bankruptcy.

59. Mr. Manley was astonished that The Bank of Missouri inaccuracy was not corrected. The fact that the account was not included in his bankruptcy was easily verifiable in The Bank of Missouri's records and the bankruptcy court's records.

60. Mr. Manley remained determined. He retained his bankruptcy lawyer to help draft another dispute letter to Experian.

61. On September 10, 2018, Mr. Manley sent another dispute letter to Experian that read:

> To Whom It May Concern:
>
> My attorney has provided me with this letter to formally dispute inaccurate information on credit report. My social security number is [redacted] and my date of birth is [redacted]. I have enclosed a copy of my social security card and a paystub so you can verify who I am.
>
> My account with The Bank of Missouri (Account No. 405731030270) is still incorrectly reporting as derogatory and included in my chapter 13 bankruptcy. This is inaccurate. As I told you in my two previous letters, my case was filed before I opened this account. I am including a copy of the first page of my petition, which shows you the date that I filed (12/18/2014). Because of you reporting this account inaccurately, The Bank of Missouri will not accept my payments. **Please correct your reporting of this account and remove any reference to it being included in bankruptcy**.
>
> When you have completed your investigation, please send me a copy of my credit report that shows the exact information you would give to someone who was considering me for a loan. Before continuing to report any further information regarding this matter, please contact me at the above address in order that I may supply you with any other information you may find helpful. Also, you may call me immediately if you need or will accept additional information to support my dispute. My number is [redacted].

62. Experian received Mr. Manley's dispute letter.

63. Experian did not conduct a reasonable reinvestigation into the disputes received from Mr. Manley.

64. For example, Experian did not review the first page of Mr. Manley's bankruptcy petition, which he attached to his dispute letters, to determine that he opened the Bank of Missouri Account after the bankruptcy was filed.

65. Experian did not review Mr. Manley's bankruptcy docket to determine that the account was not included in his bankruptcy.

9

66. Experian did not review any of Mr. Manley's payment history during the bankruptcy, which showed that he was making, personally and not through the bankruptcy, timely payments to The Bank of Missouri during the bankruptcy.

67. Experian did not review the data reported by The Bank of Missouri related to the account for the 18-month time period that the account was opened during Mr. Manley's bankruptcy, and that for those 18 months The Bank of Missouri did not include the account in his bankruptcy.

68. Rather than conducting a reasonable reinvestigation into Mr. Manley's dispute, Experian simply parroted the response made by The Bank of Missouri. Experian took no additional steps to reinvestigate Mr. Manley's dispute beyond parroting the results reported to it by The Bank of Missouri.

69. Mr. Manley was extremely distressed. He had battled through a stroke, cancer, and a bankruptcy with the hope of improving his credit and financial situation so he could provide for his family. The inaccurate Bank of Missouri account, however, was drastically harming his credit. It was undoing all the hard work Mr. Manley had done.

70. Making matters even worse, Mr. Manley discovered that Experian was also reporting an incorrect account balance for The Bank of Missouri Account. Experian began reporting that "the original amount of this account was $17,120," with multiple incorrect account balance information for each month from April 2017 through July 2018, including account balances ranging between $15,371 to $16,260.

71. The account balance information Experian was reporting was incorrect and particularly devastating to Mr. Manley's creditworthiness because the credit limit on the account was $350. The highest monthly balance he had accrued was only $340, which he timely paid. In

fact, prior to The Bank of Missouri refusing to accept his monthly payment, Mr. Manley had never missed a payment on the account.

72. On November 13, 2018, Mr. Manley sent another dispute to Experian that included the Final Report and Account from his bankruptcy, which included a list of all the creditors in his bankruptcy. The Bank of Missouri is not a listed creditor. This was clear proof for both Experian and The Bank of Missouri that the account was not included in the bankruptcy. The letter also disputed the incorrect account balance information. The dispute stated:

> My name is Curtis L. Manley (ssn [redacted] / dob [redacted]). I have enclosed a copy of my driver's license to verify my identity.
>
> Experian is reporting incorrect information about my account with the Bank of Missouri account (# 405731030270…). First, Experian is reporting that the account was 'discharged through Bankruptcy Chapter 13', and that the 'Debt [is] included in Chapter 13 Bankruptcy on Feb 26, 2018.' This is incorrect. The Bank of Missouri account was **never included in my bankruptcy**.
>
> I am attaching the Final Report and Account filed by the Trustee in my bankruptcy. As you will see, I filed my Chapter 13 Bankruptcy on December 18, 2014. I opened the Bank of Missouri account in June 2016. It was never included in my bankruptcy. The bankruptcy was completed on January 3, 2018. The Final Report and Account includes a list of all the creditors in my bankruptcy. **Bank of Missouri is not listed as a creditor in the bankruptcy.** Moreover, because the bankruptcy was completed on January 3, 2018, it would be impossible for the Bank of Missouri Account to be 'included in Chapter 13 Bankruptcy on February 26, 2018.' The bankruptcy had been completed for nearly two months at that point.
>
> Second, Experian is reporting an incorrect account balance and payment history for the Bank of Missouri account. Experian is reporting that 'the original amount of this account was $17,120', along with many months of incorrect account balance information. This is incorrect. It is also inconsistent with the information Experian is reporting. The credit limit on the account is only $350, with a high balance of $340. The account balance information Experian is reporting (including account balances ranging from $15,000-$16,000) is false.

> I have filed <u>multiple</u> disputes with Experian about this Bank of Missouri account, but Experian refuses to correct the inaccuracy. As part of this dispute, I am demanding that Experian provide a description of the procedure used to determine the accuracy and completeness of the information, including the business name and address of any furnisher of information contacted in connection with such information, and the telephone number of such furnisher.
>
> Please do not hesitate to call me if you need additional information to conduct your investigation of my dispute. My phone number is [redacted].

73. Experian received Mr. Manley's dispute letter.

74. On or about December 3, 2018, Mr. Manley received Experian's reinvestigation results from his dispute.

75. Experian did not correct the inaccurate information.

76. Instead, Experian was still reporting that The Bank of Missouri Account was included in Mr. Manley's bankruptcy.

77. Experian did not conduct a reasonable reinvestigation into Mr. Manley's dispute.

78. Experian did not review or consider the Final Report and Account from Mr. Manley's bankruptcy, which he attached to his dispute. Had it done so, Experian would have clearly seen that The Bank of Missouri was not listed as a creditor in his bankruptcy.

79. Rather than conduct a reasonable reinvestigation into Mr. Manley's dispute, Experian yet again parroted the information The Bank of Missouri provided to it following its own inadequate reinvestigation into Mr. Manley's dispute.

80. At all times since the inaccuracies were first reported by Experian, the Defendant had actual knowledge that it was inaccurately reporting The Bank of Missouri account. Nevertheless, uit furnished multiple inaccurate consumer reports about Mr. Manley that include the false and derogatory reporting of The Bank of Missouri Account.

81. On August 14, 2018, Mr. Manley was denied a credit line from Gettingon Credit. The denial was based on a credit report from Experian, which contained the inaccurate The Bank of Missouri account.

82. As a result of Defendant's' failures to comply with the requirements of the FCRA, Mr. Manley has suffered and continues to suffer actual damages, including economic loss, lost opportunity to receive credit, damage to reputation, reduction in credit score, invasion of privacy, emotional distress, and interference with normal and usual activities for which Mr. Manley seeks damages in an amount to be determined by the jury.

83. Experian has for years possessed substantial actual knowledge of the exact problem with its procedure challenged in this case: Its refusal to rely on the actual bankruptcy docket information it receives when its furnisher-customer reports information inconsistent with that court record. In fact, Experian has been sued repeatedly for that same issue and has entered into a class action injunction correcting this same violation where Experian's customers were inaccurately reporting that a debt was not included in bankruptcy inconsistent with the actual bankruptcy court records Experian had already received. *See White v. Experian Info. Sols., Inc.*, No. 8:05-cv-01070, 2018 WL 1989514, at *1 (C.D. Cal. Apr. 6, 2018).

## FIRST CLAIM FOR RELIEF

### Class Claim

### (15 U.S.C. § 1681e(b))

84. Plaintiff re-alleges and incorporates all other factual allegations set forth in this Complaint.

85. Pursuant to Federal Rule of Civil Procedure 23, Plaintiff brings this claim on behalf of a nationwide class of consumers, of which he is a member, defined as:

> All natural persons residing in the United States (including all territories and other political subdivisions of the United States) (a) who were the subject of a consumer report furnished to a third party by Experian; (b) who filed for personal bankruptcy and had a bankruptcy plan approved before the consumer report was furnished; (c) about which Experian had obtained or received the public record showing such bankruptcy before the consumer report was furnished; (d) which consumer report contained a tradeline including a date opened value after the date the bankruptcy court approved the consumer's bankruptcy plan; (e) reported as included in or discharged by the consumer's bankruptcy by Experian.
>
> Specifically excluded from this Class are: (a) all federal court judges who preside over this case, their spouses and persons who work for them; (b) all persons who elect to exclude themselves from the Class; (c) all persons who have previously executed and delivered to FedEx Ground releases of all their claims for all of their Class claims; and (d) Plaintiff's counsel and persons who work for them or are related to them by marriage or as immediately family.

86. Experian violated 15 U.S.C. § 1681e(b) by failing to establish or follow reasonable procedures to assure maximum possible accuracy in the preparation of the consumer reports it furnished regarding Plaintiff and Class Members.

87. Experian furnished inaccurate reports about Plaintiff and Class Members by stating that accounts which were not included in bankruptcy were discharged or included in those bankruptcies, despite that it possessed information showing that this reporting was patently incorrect.

88. Before issuing the reports on Plaintiff and Class Members stating that tradelines were included in or discharged by bankruptcy, Defendant possessed information showing that the accounts were opened after the subject consumer's bankruptcy had been court approved, and also that the tradelines were not included in the consumer's bankruptcy.

89. **Numerosity.** The Class is so numerous that joinder of all members is impracticable. Based on information and belief, the Class is comprised of at least thousands of members who are geographically dispersed throughout the country so as to render joinder of all Class Members impracticable. The names and addresses of the Class Members are identifiable through documents

maintained by Defendant, and the Class Members may be notified of the pendency of this action by published and/or mailed notice.

90. **Existence and Predominance of Common Questions of Law and Fact.** Common questions of law and fact exist as to all members of the Class. The total focus of the litigation will be Defendant's uniform conduct and procedures; whether Defendant had information showing its reporting of certain tradelines following a consumer's bankruptcy was patently inaccurate; and, whether it acted willfully in their failure to design and implement procedures to assure the maximum possible accuracy of information it reported. The appropriate amount of uniform statutory and/or punitive damages under 15 U.S.C. § 1681n is also a common question for members of the Class.

91. **Typicality.** Plaintiff's claims are typical of the other Class Members' claims. As described above, Defendant used common practices and automated systems in committing the conduct that Plaintiff alleges damaged him and the Class. Plaintiff seeks only statutory and punitive damages for his classwide claims and, in addition, Plaintiff is entitled to relief under the same causes of action as the other members of the Class. Equifax, Experian, and TransUnion uniformly breached the FCRA by engaging in the conduct described above, and these violations had the same effect on each member of the Class.

92. **Adequacy.** Plaintiff will fairly and adequately protect the interests of the Class. Plaintiff's interests coincide with, and are not antagonistic to, other Class members' interests. Additionally, Plaintiff has retained counsel experienced and competent in complex, commercial, multi-party, consumer, and class-action litigation. Plaintiff's counsel from Consumer Litigation Associates, P.C. has prosecuted complex FCRA class actions across the country.

93. **Superiority.** Questions of law and fact common to the Class predominate over questions affecting only individual members, and a class action is superior to other available methods for fair and efficient adjudication of the controversy. The statutory and punitive damages sought by each member are such that individual prosecution would prove burdensome and expensive given the complex and extensive litigation necessitated by Defendant's conduct. It would be virtually impossible for the members of the Class to, individually, effectively redress the classwide wrongs done to them. Even if the members of the Class themselves could afford such individual litigation, it would be an unnecessary burden on the courts.

94. Furthermore, individualized litigation presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court system presented by the complex legal and factual issues raised by Equifax, Experian, and TransUnion's conduct. By contrast, the class action device will result in substantial benefits to the litigants and the Court by allowing the Court to resolve numerous individual claims based upon a single set of proof in just one case.

95. There are no known unusual legal or factual issues that would cause management problems not normally and routinely handled in class actions. Because Class Members in each Class that Plaintiff seeks to represent may be unaware that their rights have been violated or, if aware, would be unable to litigate their claims on an individual basis because of their relatively small damages, a class action is the only practical proceeding available. To Plaintiff's knowledge, no other similar actions are pending against Defendant. This forum is appropriate for litigation because Defendant conducts business in this District and Division and the harm complained of herein occurred here.

96. Defendant has been sued over similar misreporting of bankruptcy related information, so they are aware of fundamental shortcomings in the way in which they obtain and interpret bankruptcy-related information. *See White v. Experian Info. Sols., Inc.*, No. SACV 05-1070 DOC (MLGx) (C.D. Cal.). Though it has implemented court-ordered injunctive relief from the settlement of that litigation, such injunctive relief is not effective in alleviating the problem Plaintiff raises here.

97. As a result of Defendant's willful violations of 15 U.S.C. § 1681e(b), Plaintiff and Class Members are entitled to statutory damages of between $100 and $1,000. Because the violations were willful, rendering Experian liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. Alternatively, Defendant was negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

98. Plaintiff is entitled to recover attorneys' fees pursuant to 15 U.S.C. §1681n(a) or, alternatively, 15 U.S.C. 1681o(a).

## SECOND CLAIM FOR RELIEF

### Individual claim

### (15 U.S.C. § 1681i(a))

99. Plaintiff re-alleges and incorporates all other factual allegations set forth in this Complaint.

100. After Plaintiff sent each of his disputes, Experian, Equifax, and TransUnion violated 15 U.S.C. § 1681i(a)(1) by failing to conduct a reasonable reinvestigation to determine whether the disputed information was inaccurate and record the current status of the disputed information or delete the item from Plaintiff's credit file.

101. After Plaintiff sent each of his disputes, Defendant violated 15 U.S.C. § 1681i(a)(4) by failing to review and consider all relevant information submitted by Plaintiff.

102. After Plaintiff sent each of his disputes, Defendant violated 15 U.S.C. § 1681i(a)(5) by failing to promptly delete the disputed inaccurate information from Plaintiff's credit file or modify the items of information upon a lawful reinvestigation.

103. As a result of its violations of 15 U.S.C. § 1681i(a)), Plaintiff has suffered, and continues to suffer, actual damages, credit denials, lost opportunity to receive credit, economic loss, damage to reputation, reduction in credit score, invasion of privacy, emotional distress, and interference with normal and usual activities for which Plaintiff seeks damages in an amount to be determined by the jury.

104. The violations by Experian were willful, rendering it liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. Alternatively, Defendant was negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

105. Plaintiff is entitled to recover attorney fees pursuant to 15 U.S.C. §1681o(a) or, alternatively, 15 U.S.C. 1681o(a).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendant as follows:

On the First Claim for Relief:

1. Statutory damages to be determined by the jury;
2. Equitable relief, including injunctive relief, as may be allowed by law;
3. Attorneys' fees; and
4. Costs of the action

On the Second Claim for Relief:

1. Actual and punitive damages to be determined by the jury;

2. Attorneys' fees; and

3. Costs of the action.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury.

DATED: April 22, 2019

Respectfully submitted,

**Curtis Manley**

By: ___/s/_____
Leonard A. Bennett, VSB #37523
Craig C. Marchiando, VSB #89736
Elizabeth Hanes, VSB #7557
**CONSUMER LITIGATION ASSOCIATES, P.C.**
763 J. Clyde Morris Blvd., Suite 1-A
Newport News. VA 23601
Telephone: (757) 930-3660
Fax: (757) 930-3662
Email: len@clalegal.com
craig@clalegal.com
elizabeth@clalegal.com

Jeffrey B. Sand (*pro hac vice forthcoming*)
WEINER & SAND LLC
3525 Piedmont Road
7 Piedmont Center, 3rd Floor
Atlanta, Georgia 30305
(404) 205-5029 (Tel.)
(866) 800-1482 (Fax)
js@atlantaemployeelawyer.com

*Attorneys for Plaintiff*